Wkight, J.,
delivered the opinion of the Court.
In this cause it is clear, that the claim set up by the defendant, Hinds, that he, or his wife Margaret, acquired a title to the slaves Melia and Betsy, by the statute of limitations, cannot be maintained. They were married in 1843 or 1844, and in one of those years obtained possession of these slaves from Adam Garden-hire, her father. And it is manifest, from a reading of this record, that he made no gift of them, either verbal or written, until the deed of the 15th of April, 1845.
Till then, she held them merely upon a loan from him; and her possession and that of her husband, were in subordination to Adam Gardenhire’s title. The deed was proved and registered, and we are satisfied they had actual knowledge of it, and recognized it as valid, and ever afterwards held the slaves under it. The case of Gilliam et als. v. Spence, 6 Hum., 160, is a direct authority upon this question.
The case then, as to these two slaves and their increase, must be decided alone upon the deed of the 15th of April, 1845, What are the rights of the children of Margaret Hinds and of her husband, the defendant, under that deed ?
That she took an estate for her sole and separate use, and that he had, and could have no interest in, or right to this property during the coverture, cannot be controverted.
The conveyance made by the donor, was to E. L. Gardenhire, his son, in trust, that he should “hold the above described negro girls, slaves as aforesaid, and the *405 increase of tbe said girls, to tbe sole and separate use and benefit of tbe said Margaret Hinds, daughter of him, tbe said Adam Gardenhire; and shall suffer the said Margaret Hinds and her heirs forever, to enjoy the possession and profits of the above named girls and their increase, to her and their own, and sole and separate use and benefit forever.”
This language undoubtedly gave her a separate estate, and excluded the marital rights of the defendant during the coverture. Clancy on Rights, 262 and 263.
But she has died, leaving children, and leaving him her survivor, and the real contest is between these children and him. Can they be allowed to take, in any way, under this deed; and were his marital rights cut off, not- only during the coverture, but after his wife’s death, so that as husband, he can not be permitted to acquire this property, but its ownership must devolve upon them as her blood relations and next of kin ?
This question has much of difficulty in it. But when we consider the entire instrument and take into consideration the facts of the case, and the state of the donor’s family at the time the deed was made, and to which we suppose it proper to look; (Jones v. Jones, 2 Dev. Eq. Rep., 387,) the opinion to which we have come, is, that it was tbe donor’s intention to exclude the defendant, as husband, not only during tbe marriage, but after his daughter’s death.
The intention to exclude him must be clear, or it cannot be done. But this intention may exist and be shown, not only in a deed made by him, but in a deed or will made by another. Hamrico v. Laird, 10 Yer., 222, and Ware et al. v. Sharp, 1 Swan, 489, establish *406 this. Nor is it necessary, in order to exclude him, that •vve should show his wife had only a life estate in the property. He may be excluded -where she has the entire estate. 10 Yer., 222; 1 Swan, 489. Judge Green says, “But our present inquiry is as to the intent of the settler, as to the marital rights of the husband, for if that intent be to exclude him altogether, it is a matter of no concern whether the wife took the entire estate, or only a life estate.”
The language of this deed is striking and peculiar. The trustee shall “ suffer the said Margaret Hinds and her heirs forever, to enjoy the possession and profits of the above named girls and their increase, to her and their own and sole and sepárate use and benefit forever.” He evidently here looked to a period beyond Margaret Hinds’ death; and that the trustee should hold this property for a class of persons whom the donor designated as her “ heirs,” that is her next of kin or blood relations. That this was the actual meaning of the donor individually, we have no doubt. And that this interpretation may be given to an instrument like this, in order to exclude the marital rights of the husband, is shown by Ware et al. v. Sharp, 1 Swan, 489, and Sugg v. Tyson, 2 Hawk’s R., 472.
Indeed it is difficult to distinguish these cases, in principle, from the present.
That the husband is not the heir or next of kin of the wife, has been repeatedly settled. 2 Hawk's R., 472; 1 Swan, 489.
The appointment of a trustee, though not conclusive, is a circumstance not to be overlooked. 1 Swan, 128; 6 Hum., 487.
*407 We are also of opinion, that, as to the property devised and bequeathed to E. L. Gardenhire, in trust for Margaret Hinds and her heirs, in the sixth clause of Adam Gard'enhire’s will, the marital rights of defendant must, upon the same authorities, be held excluded. That she had a sole and separate estate during the coverture, seems clear. The words, “she and her heirs are to be permitted to use and enjoy the rents, profits and emoluments of the said land, and the profits and increase of the last aforesaid negroes, forever,” appear, upon authority, to-have this effect: and it is useless to consider other expressions and words, leading to the same result.
In Tyrrel v. Hope, 2 Atk., 558, Lord Hardwick held, that a promise in writing by the intended husband to his intended wife, that “ she should enjoy and receive the issues and profits of one moiety of the estate then in the possession of her mother, after the decease of her mother,” gave the wife an estate to her separate use. He said the note could bear no other construction, although the words “separate use” were not to be found in it; for to what end should she receive the rents and profits, if they become the property of the husband the next moment ? And he added, that the word “ enjoy ” was very strong to imply separate use. 2 Atk., 558; Clancy on Rights, 263.
And in looking at this will in the light of the circumstances under which it was made, we are constrained to come to the conclusion, that the testator intended to exclude the defendant’s marital rights altogether, in favor of the heirs: i, e., the blood relations and next of kin *408 of Margaret Hinds. 1 Swan, 489; 2 Hawk’s R. 472; 6 Hum., 487.
He had gone off, and had been gone for years, had, in effect, abandoned his wife and children, when the will was made. They had lived with the testator, and been supported by him for years, the defendant being improvident and insolvent. The children of the testator’s daughter were very young and frail in health, and therefore very dependent. It was questionable whether the defendant was disposed to aid them, and if so disposed, whether he could be of any service to them. It is manifest, that while the testator was attached to his daughter and her children, he had little confidence in the defendant.
How natural then, that he should provide for her and her offspring. And how unreasonable to believe for a moment, that he intended the defendant to have this estate after his wife’s death.
To carry out his purposes, the testator devises the property to his son, the complainant, in whom he had full confidence as a trustee for his daughter Margaret and her heirs, and requires that he shall see that she and they shall “use and enjoy the rents, profits and emoluments of the said land, and the profits and increase of the last aforesaid negroes, forever.”
We cannot but regard this language, as well as the whole scope of the devise, as in restraint of the marital rights. It is purely a question of intention. And we are permitted, in order to reach it, to look at the common meaning of the word heir. The husband is neither heir or next of kin to his wife; he answers not the description used, heirs of the wife; for though, *409 in determining the quantity of an estate, the word heirs would be received as a word of expansion or limitation, and the same force allowed it, as if the words executors and administrators bad been used, yet in arriving at tbe intent, the Court will consider the common meaning of the word heir, though it be a technical word; and, as here it was not used technically because applied to personalty, it shall be taken to mean blood relations on whom the law casts the inheritance on the death of the ancestor, and is the same with next of kin.
These principles, and the result to which we have arrived, will, we think, be found sustained by the cases in 2 Hawk’s and 1 Swan, to which we have already referred. That we have reached the actual intent of Adam Gardenhire, we have no doubt. This intent should be maintained wherever it can be upon reason and authority.
We are furthermore of opinion, that the trust estate of complainant did not terminate with the death of Margaret Hinds, but that the exigencies of the trust required. and such was the intention of Adam Garden-hire, that it should be extended after her death, so as to protect this estate for her children.
In the deed it is provided that he “shall suffer the said Margaret Hinds and her heirs forever, to enjoy the possession and profits to her and their own sole and separate use and benefit forever.” The heirs might be daughters, in which event the donor continues the separate estate, and for this purpose the trust is still necessary.
And in the will .the provision is, “that she and her *410 heirs are to be permitted to enjoy the rents and profits, and emoluments of the land, and the profits and increase of the negroes.”
This language implies the continuance of the trust estate. It is not like the case of Ellis v. Fisher, 3 Sneed, 231, where the property was to vest in the heirs after the death of the first taker. It was just as necessary, and perhaps more so, to protect this estate after the death of Margaret Hinds against the possession and wasteful habits of defendant, as it was before. Of this, the donor and testator was conscious. And we think it was his intention that his son should still be continued the trustee, notwithstanding Margaret Hinds’ death.
Lucien B., one of the children, died in infancy, after the death of its mother. The Chancellor decreed its share in the personal estate, to the defendant, as its father and next of kin. This we think was proper.
We also think the Chancellor acted right in decreeing the custody and education of the child Valeria, to its grandmother, Alice Gardenhire. The circumstances of the case, and the interest and welfare of the child, as gathered from this record, demonstrate the correctness of this decree on this branch of the case. State v. Payne, 4 Hum., 523; 2 Kent, 193-194; 1 Madd. Ch. Pr., 332-333.
The child is a female, of frail and unhealthy constitution, only eight years of age. She has been principally raised by the grandmother, who is shown to be eminently fit and able to raise her in a proper manner, and is willing to do so free of cost. The child and the grandmother are devotedly attached to each other, and it is shown that the defendant, as her father, can *411 have free and unrestrained access to her. He has no wife or home, and his means to educate her are limited. From these and other facts in this record, we cannot hesitate in awarding to the grandmother the possession of the child.
The decree of the> Chancellor is, in all respects, affirmed. The costs of this Court will be paid by the defendant.